UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

KATHY LOVELACE,

                                   Plaintiff,

                  -vs-                                    13-CV-400-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                   Defendant.

───────────────────────────────────

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF,
               ESQ., of Counsel), Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (MARY PAT
               FLEMING, Assistant United States Attorney, of Counsel), Buffalo,
               New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated April 16, 2014.  Item

19.

        Plaintiff Kathy Lovelace initiated this action on April 23, 2013, pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), to review the final determination of the

Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social

Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits,

as provided for in Titles II and XVI of the Act.   Both parties have moved for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Items

14, 17.  For the following reasons, plaintiff's motion is denied, and the Commissioner's

motion is granted.

**BACKGROUND**

Plaintiff was born on January 3, 1967 (Tr. 144).[1]  She filed an application for both SSDI and SSI benefits on June 17, 2010, alleging disability due to sarcoidosis, chest pain, shortness of breath, hypertension, depression, osteoporosis, and gastroesophageal reflux disease ("GERD"), with an onset date of April 14, 2010 (*see* Tr. 144-51, 189).   The applications were denied administratively (Tr. 60-67), and plaintiff requested a hearing which was held before Administrative Law Judge ("ALJ") David Lewandowski on January 26, 2012 (Tr. 27-59).  Plaintiff testified, and was represented at the hearing by attorney Kelly Laga.  Vocational expert ("VE") Victor G. Alberigi also testified.

In a decision issued on April 11, 2012, ALJ Lewandowski found that plaintiff was not disabled within the meaning of the Act (Tr. 10-22).  Following the sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 416.920(a), the ALJ determined that plaintiff's mental and physical impairments (including asthma, obesity, pulmonary embolism, sarcoidosis, low back arthritis, and major depressive disorder), while "severe," did not meet or equal the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 15-17).  The ALJ found that the evidence in the record, including plaintiff's testimony and statements regarding the limiting effect of her symptoms and the reports and opinions of consultative and treating medical sources, demonstrated that plaintiff had the residual functional

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

capacity ("RFC") for "less than the full range of sedentary work"[2] limited to performing simple tasks in a low stress work environment (Tr. 17-18).  Considering her age, education, work experience, and RFC, and based in part upon the VE's testimony, the ALJ determined that although plaintiff was unable to return to any of her past relevant work, she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 20-21).

The Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed and the case should be remanded for further proceedings because the ALJ did not adequately consider evidence relevant to plaintiff's pulmonary functioning, and failed to properly assess plaintiff's mental RFC. These contentions are addressed in the discussion that follows.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if

---

[2]As defined in the Regulations:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only

to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing

*Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

   Under these standards, the scope of judicial review of the Commissioner's decision

is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of*

*Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14,

2000).

   However, "[b]efore the insulation of the substantial evidence test comes into play,

it must first be determined that the facts of a particular case have been evaluated in the

light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000);

*Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d

at 773).  "Failure to apply the correct legal standard constitutes reversible error, including,

in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the Regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."

*Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf.*

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the

medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the

court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight*

*Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must

present proof sufficient to show that she suffers from a medically determinable physical or

mental impairment "which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months ...," 42 U.S.C.

§ 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous

work but cannot, considering h[er] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C.

§ 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a) (SSDI), 416.905(a) (SSI).  As indicated

above, the Regulations set forth a five-step process to be followed when a disability claim

comes before an ALJ for evaluation of the claimant's eligibility for benefits.   *See* 20

C.F.R.§§ 404.1520, 416.920.   First, the ALJ must determine whether the claimant is

presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide

if the claimant has a "severe" impairment, which is an impairment or combination of

impairments that has lasted (or may be expected to last) for a continuous period of at least

12 months which "significantly limits [the claimant's] physical or mental ability to do basic

work activities...."  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2; other citations, internal quotation marks, and alterations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will

not accurately determine disability status ….” *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, “the Commissioner must ‘introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.’ ”  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ’s Disability Determination

In this case, ALJ Lewandowski found at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since April 14, 2010, the alleged onset date (Tr. 15).  At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff’s asthma, obesity, pulmonary embolism, sarcoidosis, low back arthritis, and major depressive disorder, considered in combination, caused “more than minimal” limitations in her ability to perform basic work activities and were therefore “severe” within the meaning of the Regulations (Tr. 15).

At step three, the ALJ found that none of plaintiff’s impairments met the criteria for Listing severity, specifically referencing Listings 1.00 (musculoskeletal system); 3.00 (respiratory system); 4.00 (cardiovascular system); 7.00 (hematological disorders); and 14.00 (immune system disorders) (Tr. 16).  The ALJ also found the evidence of plaintiff’s mental impairment insufficient to meet the criteria for Listing 12.04 (affective disorders) (Tr. 16-17).

Before proceeding to step four of the sequential evaluation, the ALJ determined that plaintiff had the RFC to perform less than the full range of sedentary work, with certain exertional and nonexertional limitations (Tr. 17).  In making this assessment, the ALJ noted

plaintiff's allegations of respiratory problems, fatigue, shortness of breath, arthritis pain, and depression, and that plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms.  However, the ALJ determined that the evidence in the record did not support plaintiff's allegations with respect to the intensity, persistence, and limiting effects of her symptoms (Tr. 17-18).

With regard to plaintiff's physical impairments, the ALJ referred to medical records and treatment notes from plaintiff's repeated visits to Millard Fillmore Hospital (Gates Circle) emergency room in January, June, August and October 2010, complaining of chest pain, shortness of breath, and other problems (*see* Tr. 18; 316-48).  Upon admission to the hospital in June 2010, she was diagnosed as having "recurrent pulmonary embolism," and was restarted on the medications Lovenox and Coumadin.  The discharge summary noted marked improvement with medication, and recommended outpatient cardiology assessment and follow-up with her primary care physician (Tr. 243-45).

The ALJ discussed the report of Dr. Samuel Balderman, who conducted a consultative internal medicine examination of plaintiff on November 2010 (*see* Tr. 349-52). Dr. Balderman's diagnosis was sarcoidosis, history of pulmonary embolism, and hypertension, with a fair prognosis (Tr. 352).  Dr. Balderman stated that, "in order to fully evaluate [plaintiff]'s work capacity, a pulmonary function test [PFT] should be reviewed" (*id.*).  The ALJ also referred to treatment by pulmonary specialist Dr. Manoj Mammen, MD, who saw plaintiff four times between January and October 2011 for complaints of asthma, sarcoidosis, obstructive sleep apnea, and a history of pulmonary embolism (*see* Tr. 509-22).  The ALJ reported that Dr. Mammen prescribed a course of methotrexate for

plaintiff's sarcoidosis, which had "good results with increased ability to tolerate activity" (Tr. 18).

With regard to plaintiff's mental impairment, the ALJ referred to records from Kaleida Health indicating that plaintiff's primary care physician prescribed psychiatric medication beginning in December 2010, with active psychiatric treatment beginning in January 2011 at Lakeshore Behavioral Health (Tr. 19; *see* Tr. 472-99).  The ALJ also discussed the report of Dr. Robert Hill, a psychologist who conducted a consultative psychiatric examination of plaintiff on November 10, 2010 (Tr. 353-57).  Dr. Hill reported that, on mental status examination, plaintiff was cooperative, well groomed, and fully oriented; with adequate manner of relating; appropriate dress; normal gait, posture, and motor behavior; appropriate eye contact; fluent speech; adequate expressive and receptive language skills; coherent and goal-directed thought processes; no evidence of hallucinations, delusions, or paranoia; somewhat dysthymic mood; somewhat subdued but pleasant affect; intact attention and concentration, with ability to multiply 2 x 35 and do serial threes correctly; intact recent and remote memory skills, with ability to recall three objects immediately and after an intervening task, and ability to recall five digits forward and three digits backward; cognitive functioning in the average range with appropriate general fund of information; and fair-to-good insight and judgment (Tr. 354-55).  Dr. Hill's diagnosis was adjustment disorder with mixed anxiety and depressed mood (Tr. 356).  In Dr. Hill's opinion, the results of his evaluation were consistent with some psychiatric problems, but they did not appear to be significant enough to interfere entirely with plaintiff's ability to function on a daily basis (*id.*).  He stated that plaintiff could follow and understand simple directions and instructions; perform simple tasks independently;

maintain some attention and concentration; generally maintain a regular schedule; learn some new tasks; make some appropriate decisions; relate generally adequately with others; maybe have some problems with stress at times; and maybe would do better in a low stress environment (*id*.).  Her prognosis was "[f]air given current reported symptoms, but should be better with some enhanced treatment and reduction in stressors" (*id*.).  The ALJ accorded the opinion of Dr. Hill "great weigh[t] in light of his personal examination of [plaintiff] and the consistency of his findings with the evidence of record" (Tr. 20).  The ALJ also gave great weight to the opinion stated in the December 14, 2010, Psychiatric Review Technique Form ("PRTF") submitted by state agency psychological reviewing consultant Dr. C. Butensky, who reported that plaintiff had mild restriction of daily activities; mild difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of deterioration lasting for extended durations (Tr. 371).  Dr. Butensky noted that Dr. Hill's mental status examination revealed no significant abnormalities, and that Dr. Hill found no limitations of mental work capacities, except for some difficulty dealing with stress.  Based on his review of the evidence, Dr. Butensky found that plaintiff's psychiatric impairment was "non-severe" (Tr. 373).

At step four of the sequential evaluation, the ALJ found that plaintiff was unable to perform any of her past relevant as a service worker, bus aide, assistant manager, supervisor, or check cashier (Tr. 20).

Finally, at step five, the ALJ found that plaintiff could make a successful adjustment to other work existing in the national economy given her age, education, work experience, and RFC (Tr. 21).  The ALJ relied on the VE's testimony indicating that, given these factors and considering the extent to which the limitations reported by plaintiff's treating,

consultative, and reviewing physicians might erode the occupational base for unskilled sedentary work, plaintiff would be able to perform the requirements of a significant number of positions in the national and regional economies (Tr. 21).   Using the grids as a framework for decisionmaking, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 39-40).

## IV.    Plaintiff's Motion

Plaintiff contends that the Commissioner's determination should be reversed, and the case remanded for further consideration, because the ALJ did not adequately consider the evidence in the record regarding plaintiff's pulmonary impairment.   According to plaintiff, in assessing physical RFC, the ALJ failed to discuss–or even mention–the results of two pulmonary functioning tests ("PFTs") indicating that plaintiff suffered a significant decrease in pulmonary functioning between June 2010 and August 2011.   More specifically, plaintiff references the results of a PFT performed at Millard Fillmore Hospital on June 21, 2010, showing "reduced TLC [total lung capacity] at 77% of predicted, consistent with Moderate Restrictive change" (Tr. 293), and Dr. Mammen's notes of plaintiff's August 23, 2011, visit to the Kaleida Health Heart and Lung Clinic reporting a "diffuse lung capacity of 64% of predicted" (Tr. 519).  Plaintiff contends that this represents clear evidence of a decrease in her lung capacity from 77% in June 2010, to 64% in August 2011, and that the ALJ failed to discharge his affirmative duty to fully develop the record in this regard by obtaining a copy of the August 2011 PFT referred to by Dr. Mammen, which does not appear in the present record.

However, as the Commissioner points out in her motion papers, and as confirmed by the court's review of the evidence, Dr. Mammen's notes of plaintiff's August 23, 2011, clinic visit actually refer to a "January 31, 2001 PFT that had FVC of 102% of predicted, FEV1 of 103% of predicted, ratio 100, TLC of 104% of predicted, diffuse lung capacity of 64% of predicted" (Tr. 519).  These results are virtually identical to the results of a PFT contained in a report from the Buffalo General Hospital Pulmonary Function Lab dated January 11, 2011 (Physician: Dr. Mammen), which is set forth in the record at Tr. 512. Notwithstanding the citation to an incorrect date, it is clear that Dr. Mammen was referring to a report that was included in the medical records reviewed by the ALJ in making the physical RFC assessment, and is part of the record presently before this court.

Accordingly, plaintiff's argument regarding the ALJ's failure to adequately consider, and further develop, evidence of plaintiff's pulmonary functioning is based on a misreading of the record, and provides no basis for reversal of the Commissioner's determination.

Moreover, the court's review also reveals substantial evidence of record to support the ALJ's physical RFC assessment.  For example, the ALJ specifically noted plaintiff's multiple lung scans, showing low probability for pulmonary embolism (Tr. 18; *see* Tr. 260, 286, 320, 513), as well as multiple negative chest x-rays (*see* Tr. 259-60, 306-07, 319, 323), and the results of several physical examinations finding plaintiff in no acute distress (*see* Tr. 226, 309, 318, 325, 350, 401, 407, 519, 521).  The ALJ also referred to Dr. Balderman's findings on consultative medical examination in November 2010 indicating "largely normal" results, "with lungs clear to ausculation and no significant chest wall abnormality" and "full range of motion of the cervical and lumbar spine, and upper and lower extremities" (Tr. 18-19; *see* Tr. 349-52).  In addition, the ALJ accorded "some weight"

to the opinion of "Medical Consultant" H. Findlay, who reviewed the medical evidence in December 2010 (following Dr. Balderman's consultative examination) and found it to be "consistent with "RFC-light" with restrictions for unprotected heights and dangerous machinery (Tr. 358). The ALJ noted that although the entire medical record indicated further limitation to a range of sedentary work, the consultative reviewer's opinion was not otherwise inconsistent with the ALJ's assessment of plaintiff's RFC for a range of sedentary work (*see* Tr. 20).

Finally, plaintiff claims that the ALJ failed to properly assess plaintiff's mental RFC. In this regard, the Regulations provide as a general matter that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 (S.S.A. 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

Upon review of the ALJ's mental RFC assessment in this case, the court finds adequate compliance with this guidance. As indicated, the ALJ assigned great weight to the findings and opinion of Dr. Hill, rendered upon comprehensive psychiatric examination in November 2010, that plaintiff was able to follow and understand instructions; perform

simple tasks independently; maintain attention and concentration, maintain a regular schedule; learn new tasks; make appropriate decisions; and relate adequately with others. Dr. Hill further indicated that although these activities may at times be compromised by symptoms of stress, anxiety, or depression, plaintiff's mental impairments "did not appear to be significant enough to interfere entirely with [her] ability to function on a daily basis" (Tr. 356).

Plaintiff claims that the ALJ failed to consider, or even acknowledge, mental health treatment notes from her visits to Lake Shore Behavioral Health from January to October 2011, which provide pertinent evidence of significant limitations of her work-related mental activities unavailable to Dr. Hill when he conducted his consultative psychiatric examination. However, the court's review of the record reveals that the ALJ did, in fact, consider and acknowledge these records (see Tr. 19), and further, that there are no findings, diagnoses, or other evidence in the treatment notes inconsistent with the ALJ's mental RFC assessment limiting plaintiff to sedentary work activity involving simple tasks in a low stress environment.

Based on this review, the court finds that the ALJ's evaluation of the facts in this case was performed in light of correct legal standards, and his decision is supported by substantial evidence. Accordingly, the Commissioner's determination must be upheld.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 14) is denied, the Commissioner's motion for judgment on the pleadings (Item 17) is granted, and the case is dismissed.

-15-

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

                                         \s\ John T. Curtin
                                       JOHN T. CURTIN
                                  United States District Judge

Dated:   August 13, 2014